IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-00145-BO

| | | |
|---|---|---|
| NICHOLAS PADAO and ROBERT UYEMATSU, *on behalf of themselves and others similarly situated*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | **FIRST AMENDED COMPLAINT—CLASS ACTION** |
| AMERICAN EXPRESS NATIONAL BANK, | ) ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) ) ) ) | |

Plaintiffs Nicholas Padao and Robert Uyematsu, individually and on behalf of a class of similarly situated persons, hereby file this Class Action Complaint, making the allegations herein upon personal knowledge as to themselves and their own acts, and upon information and belief and based upon investigation of counsel as to all other matters, as set forth herein.

## INTRODUCTION

1.     Since the beginning of the Iraq War through the present, members of our military services have been asked to make many sacrifices for our nation. One of these sacrifices is financial: leaving family, friends and the comforts of civilian life to answer our country's call to duty also requires leaving behind employment, a career, and financial security. The Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. §§ 3901 *et seq.* (formerly 50 U.S.C. App. §§ 501 *et seq.*), was enacted to address this sacrifice, and seeks "to enable [servicemembers] to devote their entire energy to defense needs of the Nation." 50 U.S.C. § 3902(1). The SCRA

guarantees that all debts incurred by a servicemember before being called to active duty are reduced to a 6% interest rate, from the date deployment orders are received through the ensuing active-duty period as required by 50 U.S.C. § 3937. The Act also requires financial institutions to permanently forgive interest above 6%.

2.      To attract and retain the businesses of active military members, Defendant American Express National Bank provides contractual benefits that are more generous than required by the SCRA (hereafter "Military Benefits Program").

3.      Defendant markets heavily to servicemembers as a bank dedicated to military members, veterans, and their families. Defendant breached their statutory and contractual duties to America's fighting forces by charging interest rates and fees that were too high, allowing unlawful charges to improperly inflate servicemembers' principal balances, and then charging compound interest on these inflated balances.

4.      Defendant then concealed overcharges from the thousands of military families victimized by Defendant's practices. Plaintiff Padao and other class members did not discover that Defendant was violating their rights until 2022, when Defendant sent misleading correspondence and payment checks to some military families. When Defendant's actions led Plaintiff Padao to investigate Defendant's compliance with the SCRA and Defendant's Military Benefits Program, he learned that Defendant had committed wholesale violations of the SCRA and other military benefits which caused damages to thousands of military families.

5.      The named plaintiffs in this action represented and protected our nation through military service. They now seek to represent and protect their fellow servicemembers and veterans through this class action.

## JURISDICTION AND VENUE

6.     Plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1331 because this action arises, in part, under the laws of the United States, including the Servicemembers Civil Relief Act ("SCRA") 50 U.S.C. §§ 3901 *et seq.*, the Credit Card Accountability Responsibility and Disclosure Act of 2009 (the Credit CARD Act), 15 U.S.C. §§ 1601 *et seq.*, and the Military Lending Act ("MLA"), 10 U.S.C. § 987.

7.     In addition, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) and (6) because the aggregate claims of the proposed class members exceed $5,000,000, and at least one named plaintiff resides in a different state than Defendant. The amount in controversy in this matter includes, but is not limited to, actual and consequential monetary damages, disgorgement of Defendant's ill-gotten gains, punitive damages, civil penalties, and attorneys' fees and costs.

8.     This Court has personal jurisdiction over Defendant, as it conducts business activities which are the subject of the present complaint in North Carolina, and it maintains major facilities and operations within North Carolina.

9.     Venue is proper in this Court, as Defendant has major operations within North Carolina, is subject to personal jurisdiction within the district, and a significant portion of class members reside within the district. Maintaining the venue of this class action in this district is therefore proper under 28 U.S.C. § 1391.

## PARTIES

10.     Plaintiffs file this Complaint in their individual capacity, and as a class action on behalf of themselves and all others similarly situated. They, along with other class members who

3

may be named as class representatives at the time a motion is filed to certify the proposed class, will represent the following class:

> All persons who, at any time on or after September 11, 2001, received reduced interest and/or fee benefits from Defendant on an interest-bearing obligation because of an obligor's military service, but excluding persons who have executed a release of the rights claimed in this action.

11. Plaintiff Nicholas Padao had one or more interest-bearing obligations to Defendant that qualified for and legally required reduced interest and/or fees benefits from Defendant because of an obligor's military service.

12. Plaintiff Robert Uyematsu had one or more interest-bearing obligations to Defendant that qualified for and legally required reduced interest and/or fees benefits from Defendant because of an obligor's military service.

13. Defendant American Express National Bank is a federal savings bank regulated by the Office of the Comptroller of the Currency (OCC). Upon information and belief, American Express National Bank is a federally chartered savings bank with a principal place of business in Salt Lake City, Utah. Plaintiff is investigating whether other American Express entities share responsibility for the acts alleged herein and, if so, will amend this complaint.

14. Defendant provides credit card and other banking products and services to customers across the United States.

15. Upon information and belief, Defendant does substantial business in the State of North Carolina with a major data center, corporate offices, employees, and customers located in North Carolina. Defendant maintains minimum contacts with the State of North Carolina to satisfy the due process clause of the United States Constitution, and it has sufficient minimum contacts

with the State of North Carolina such that maintenance of this suit does not offend traditional notions of fair play and substantial justice.

**CLASS ACTION ALLEGATIONS**

**Class Definition**

16.     In accordance with Federal Rule of Civil Procedure 23, Plaintiffs bring this action in their individual capacity and as a class action on behalf of themselves and all others similarly situated. They, along with other class members who may be named as class representatives at the time a motion is filed to certify the proposed class, will represent the following class:

> All persons who, at any time on or after September 11, 2001, received reduced interest and/or fee benefits from Defendant on an interest-bearing obligation because of an obligor's military service, but excluding persons who have executed a release of the rights claimed in this action.

17.     This class action satisfies the requirements of Federal Rule of Civil Procedure 23, including, but not limited to, numerosity, commonality, typicality, adequacy, and predominance.

**Impracticable Joinder**

18.     The proposed class is composed of tens of thousands of persons, geographically dispersed throughout the United States and serving the country overseas, the joinder of whom in one action is impracticable. The disposition of their claims in a class action will provide substantial benefits to both parties and the Court. Defendant, either directly or through affiliated entities, are in possession of the names and addresses of all class members.

19.     Class treatment is particularly appropriate here because Defendant conducts business in every jurisdiction in the United States. Further, this matter involves multiple federal statutes which were extensively and harmfully misapplied and violated by Defendant.

5

**Risk of Inconsistent or Varying Adjudications**

20.     Prosecution of separate actions by class members would risk inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant.

21.     Further, the outcomes of separate actions by individual members of the class could, as a practical matter, be potentially dispositive of the interests of other members of the class and substantially impair or impede their ability to protect their interests. Class-wide adjudication of Plaintiffs' claims, therefore, is appropriate.

22.     Defendant has acted on grounds generally applicable to the class, thereby making class-wide adjudication of these claims appropriate.

**Common Questions of Law and Fact**

23.     There exists a well-defined community of interests and questions common to the class, which predominate over individual factual or legal questions. These common factual and legal questions include, but are not limited to:

(a)     Whether Defendant improperly applied the SCRA to class members' accounts, thereby denying them benefits to which they are entitled by law;

(b)     Whether Defendant's Military Benefits Program, as described herein, constituted an enforceable contract term or a separately enforceable contract between Defendant and class members, and whether Defendant's violations of the terms of its program gives rise to liability for breach of contract and/or violation of the SCRA;

(c)     Whether Defendant's practices violated the Truth in Lending Act ("TILA"), including but not limited to violations of the Credit CARD Act of 2009, which amended TILA;

(d)    Whether Defendant's practices violated the MLA and whether such violation entitles Plaintiffs to void the contract and obtain damages of no less than $500 per violation;

(e)    Whether Defendant's cardmember agreement is invalid and unenforceable due to its defects and ambiguities precluding mutual assent and formation of a contract, and pursuant to the SCRA and MLA ;

(f)    Whether Defendant knew, reasonably should have known, or recklessly disregarded that their acts and practices were unlawful;

(g)    Whether Defendant's acts and practices were negligent;

(h)    Whether Defendant engaged in practices intending to deceive consumers;

(i)    Whether Defendant is entitled to an offset of damages for voluntary payments sent to some class members;

(j)    Whether Plaintiff Padao and class members who received such payments have suffered or will suffer damages when Defendant overstates the taxable component of the payments to the Internal Revenue Service, causing such class members to be charged excess taxes;

(k)    Whether Plaintiffs and the class are entitled to statutory, actual, consequential, and/or punitive damages;

(l)    Whether Plaintiffs and the class are entitled to an accounting and other equitable relief;

(m)    Whether Defendant owed fiduciary duties to Plaintiffs and the class and whether they breached such duties; and

(n)     Whether Plaintiffs and the class are entitled to recovery of attorneys' fees and costs.

**Typicality**

24.     The individual Plaintiffs and the class representatives to be named are asserting claims that are typical of the claims of the entire class, and the class representatives will fairly and adequately represent and protect the interests of the class in that they have no interests antagonistic to those of the other members of the class.

**Fair and Adequate Representation**

25.     The individual Plaintiffs have retained counsel who are competent and experienced in the handling of litigation, including class action litigation, and who will fairly and adequately represent and protect the interests of the class. Likewise, the class representative will fairly and adequately represent and protect the interests of the class as a whole.

**Superiority of Class Action Procedure**

26.     The individual Plaintiffs and other class members have all suffered damages as a result of Defendant's unlawful and wrongful conduct. Absent a class action, Defendant will likely retain a substantial unlawful gain, its conduct will go un-remedied and uncorrected, and the class members will likely be deprived of adequate relief. Class action treatment of these claims is superior to handling the claim in other ways.

27.     Certification of the class is appropriate under Federal Rule of Civil Procedure 23.

## STATEMENT OF FACTS

**Plaintiff Nicholas Padao:**

28.     Plaintiff Nicholas Padao resides in Champaign, Illinois. He has served our Nation since 2003, including service in the Army National Guard and a deployment to Iraq in 2018-2019.

29. During this period of service, Mr. Padao has had an interest-bearing account with Defendant, including credit cards.

30. Defendant provided Mr. Padao with interest rate and fee benefits under the SCRA and/or its Military Benefits Program.

31. Defendant failed to reduce the interest rate and waive fees as required by the SCRA and/or its Military Benefits Program. This practice was imperceptible to Mr. Padao, as his monthly statements and other correspondence contained misrepresentations leading him to believe that he was being charged the correct interest rate.

32. Mr. Padao relied on the misrepresentations in Defendant's monthly account statements and correspondence when choosing to maintain accounts with Defendant. He also continued to use the accounts and incur more debt on them, to Defendant's benefit, based upon Defendant's false representations that it was complying with the SCRA and its Military Benefits Program. Had he known that Defendant was charging him a higher interest rate than permitted by the SCRA or its Military Benefits Program, he would have closed accounts with Defendant and moved to another bank.

33. Mr. Padao paid more in interest charges and fees on accounts with Defendant than should have been due under a correct application of the SCRA and the Military Benefits Program and TILA.

34. After Mr. Padao left active duty, Defendant raised the interest rate on outstanding balances.

35. Mr. Padao never received an accounting of the overcharged interest or improper fees. Upon information and belief, Defendant is still in possession of certain funds which were

obtained as a result of the overcharged interest and improper fees and Defendant continues to overcharge him on a regular basis.

36.     Defendant has admitted that it overcharged Mr. Padao under the SCRA and owes him a refund. Mr. Padao never received an accounting or similar documentation related to the overcharges or the refund he is owed, or an explanation of how Defendant calculated the overcharges or how it will determine the amount of taxable income to be reported to the Internal Revenue Service.

**Plaintiff Robert Uyematsu:**

37.     Captain Robert Uyematsu resides in California. He has served our Nation since 2003. In his eleven years of active duty in the United States Air Force, he was deployed to Qatar and Afghanistan. Since 2014, he has served with the Air National Guard and has served on active duty orders every year since 2018.

38.     Since approximately 2019, Captain Uyematsu has had an interest-bearing Hilton Honors Aspire Credit Card with Defendant. In addition, while on active duty in 2021, Defendant issued him an interest bearing American Express Platinum Credit Card.

39.     Defendant provided Captain Uyematsu with interest rate and fee benefits under the SCRA and/or its Military Benefits Program. For example, Defendant provided him with an interest rate of 0% on both of his credit cards.

40.     Defendant failed to reduce the interest rate and waive fees as required by the SCRA and/or its Military Benefits Program. This practice was imperceptible to Captain Uyematsu, as his monthly statements and other correspondence contained misrepresentations that he was being charged the correct interest rate.

41.     Captain Uyematsu relied on the misrepresentations in Defendant's monthly account statements and correspondence when choosing to maintain accounts with Defendant. He also continued to use the accounts and incur more debt on them, to Defendant's benefit, based upon Defendant's false representations that it was complying with the SCRA and its Military Benefits Program. Had he known that Defendant was charging him a higher interest rate than permitted by the SCRA or its Military Benefits Program, Captain Uyematsu would have closed accounts with Defendant and moved to another bank.

42.     Captain Uyematsu paid more in interest charges and fees on accounts with Defendant than should have been due under a correct application of the SCRA and the Military Benefits Program and TILA.

43.     Captain Uyematsu never received an accounting of the overcharged interest or improper fees. Upon information and belief, Defendant is still in possession of certain funds which were obtained as a result of the overcharged interest and improper fees and Defendant continues to overcharge him on a regular basis.

**General Allegations**

44.     Defendant promised Plaintiffs and other class members that it monitored the accounts of servicemembers using a SCRA-compliant program.

45.     The terms of Defendant's Military Benefits Program included certain benefits that Defendant considered to be more generous than those required by the SCRA. Those terms evolved over time but were always uniform across customers at any given point in time. For example, but not by way of limitation, Defendant promised to waive all fees.

46.     When a servicemember is enrolled into Defendant's Military Benefits Program, it sends them a form letter confirming their SCRA coverage and informing the servicemember of the benefits they'll receive under the Military Benefits Program.

47.     Once servicemembers' coverage under Defendant's Military Benefits Program ends, Defendant increases the interest rate and fees on all outstanding balances on those servicemembers' accounts.

48.     The terms of Defendant's Military Benefits Program were well documented and systematically communicated to class members; they became terms of the agreements between the parties and therefore became enforceable in contract.

49.     Defendant offered the Military Benefits Program and its associated benefits to appear competitive in the consumer banking market and to retain the business of servicemembers. Plaintiffs and other class members relied on Defendant's representations regarding the Military Benefits Program when deciding to maintain their accounts with Defendant and to incur more debts on those accounts. If Defendant had failed to provide this competitive program, Plaintiff and other class members would have curtailed use of and closed their accounts with Defendant and moved to another bank.

50.     Despite their representations to Plaintiffs and other class members, Defendant failed to comply with the SCRA and the terms of its Military Benefits Program. Specifically, Defendant failed to reduce the interest rates on servicemembers' accounts as promised and required, failed to waive fees as promised, and failed to properly calculate the debt forgiveness requirements of both the SCRA and the Military Benefits Program.

51.     Defendant failed to comply with the timing requirements of the SCRA and its Military Benefits Program, under which reductions in the interest rates on servicemembers' accounts are effective on the date military orders are received.

52.     Defendant did not forgive incurred interest, including certain fees and charges, as required by the SCRA and the Military Benefits Program. As a result, Defendant overstated the outstanding balances on servicemembers' accounts and unlawfully charged interest on those balances on a recurring basis.

53.     Defendant has not maintained adequate internal systems to ensure compliance with the SCRA or to meet the terms of its Military Benefits Program.

54.     On information and belief, Defendant charged Plaintiffs and other class members with incorrect interest rates during their periods of military service that were less than 30 days, in violation of the SCRA and the Military Benefits Program.

55.     Defendant failed to timely provide benefits and to properly calculate retroactive adjustments, resulting in inflated interest charges that were rolled into balances and incurred compound interest.

56.     Defendant's violations of the SCRA and Military Benefits Program were carried out through complex computer calculations that were not discoverable by servicemembers, as the periodic account statements and other communications received by Plaintiffs and other class members incorrectly reflected that the interest rates on servicemembers' accounts were properly reduced.

57.      These violations caused damage to servicemembers, including the miscalculation of principal, interest, payoff amounts, and improper imposition of interest, fees, and other charges.

58. Defendant's violations of the terms of the Military Benefits Program constituted a breach of its contracts with Plaintiffs and other class members.

59. In addition to violating the SCRA and the terms of its own Military Benefits Program, Defendant made certain misrepresentations to Plaintiffs and other class members about their accounts that concealed and prevented Plaintiffs and class members from reasonably discovering such violations.

60. On information and belief, Defendant conducted an internal audit of their SCRA compliance and determined that they had systematically and repeatedly violated the SCRA and the terms of the Military Benefits Program by failing to apply the required interest rate and fee reductions to servicemembers' accounts during and following times of active military service.

61. However, on information and belief, the audit did not cover the entire period in which Defendant overcharged military customers.

62. After Defendant discovered that it had charged servicemembers improperly high interest rates and fees during military service in violation of the SCRA and Military Benefits Program, Defendant never admitted any specific violations to Plaintiffs or other class members or provided any accounting of the overcharges.

63. Instead, on information and belief, Defendant sent unsolicited refunds for overcharges.

64. Based upon the actions of other banks and Defendant's statement, Plaintiff Padao and other class members expect to receive tax forms from Defendant suggesting that at least a portion of the refund is taxable income. Without an accounting, Plaintiff Padao will have no way to determine whether the correct amounts will be reported as taxable. Without a proper accounting,

Plaintiffs and class members are without recourse to challenge Defendant's reporting to taxing authorities.

65.      Through its audit, voluntary payment and communications to Plaintiff Padao and class members, Defendant reaffirmed its debt to customers and restarted any applicable statute of limitations period.

66.      Defendant's acts and omissions, including its failure to comply with the SCRA and Military Benefits Program, caused damage to Plaintiffs, including but not limited to payment of additional, unnecessary and improper interest, charges, and fees.

67.      In addition, Defendant is still in possession of certain funds belonging to Plaintiffs and class members which were obtained as a result of the overcharged interest on servicemembers' accounts.

68.      Defendant's failure to comply with the SCRA, TILA, and the Military Benefits Program resulted in significant wrongful gain, based on the improperly high interest rates charged to the accounts of Plaintiffs and other class members during and after periods of active military service.

## ALLEGATIONS AS TO DISCOVERY

69.      Due to Defendant's misrepresentations to Plaintiffs and class members and concealment of SCRA violations and overcharges, Plaintiffs and class members did not discover, and had no reasonable opportunity to discover, the violations until 2022. Defendant's violations at issue were self-concealing, which is evidenced, in part, by the fact that they continued the nationwide practice of overcharging active military servicemembers for more than a decade.

70.      Some if not all the violations and breaches described herein remain ongoing. Defendant's violations of the SCRA resulted in improper inflation of the principal balances owed

by Plaintiffs and class members, and subsequent monthly interest being charged on these inflated balances. Thus, each and every month in which Defendant overcharged interest on servicemembers' accounts as required by the SCRA, or failed to forgive debt that accrued as a result of this failure, constituted an ongoing violation of, *inter alia*, the SCRA.

71.     Each month, Defendant sent incorrect periodic statements to Plaintiffs and class members, constituting an ongoing violation of the SCRA, TILA, and other laws and regulations.

72.     Defendant further violated TILA when it sent correspondence to servicemembers containing misrepresentations that were designed to conceal Defendant's violations of the SCRA and discourage further investigation by Plaintiffs and class members. Defendant's actions, including its misrepresentations, and failure to provide an accounting of its SCRA violations, constitute further violations of statutory and common law and have caused further damages to Plaintiffs and class members.

73.     The policies behind the SCRA, and the facts described herein, require an equitable tolling of any statute of limitations. Defendant overcharged servicemembers for over a decade, and in many cases, the servicemembers' active-duty status hindered their ability to discover these violations. Defendant should not be allowed to retain its ill-gotten gains resulting from such improper activity.

## **FIRST CAUSE OF ACTION**

### **(Violation of the Servicemembers Civil Relief Act)**

74.     Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

75.     Plaintiffs, on behalf of themselves and the class, have a private right of action for violations of the SCRA pursuant to 50 U.S.C. § 4042 (formerly 50 U.S.C. App. § 597a).

76.     The SCRA, formerly known as the War and National Defense Soldiers' and Sailors' Civil Relief Act of 1940, guarantees that all debts incurred by a servicemember or servicemember reservist before being called to active duty will be reduced to an interest rate of 6% from the date of receipt of their orders, and during the ensuing active-duty period as required by 50 U.S.C. § 3937 (formerly 50 U.S.C. App. § 527). Several classes of fees and charges qualify as interest. Any interest above the 6% must be forgiven and cannot be deferred.

77.     Defendant violated the SCRA by failing to properly apply its provisions to the accounts and outstanding debt of Plaintiffs and other class members. Specifically, Defendant charged interest rates higher than 6% on the accounts of Plaintiffs and class members during qualifying periods, and failed to forgive overcharged interest as required by the SCRA. One method by which Defendant overcharged servicemember was by failing to properly start benefits on the date that national guard members' receive their active duty orders. As a result, Defendant improperly inflated servicemembers' principal balances, and subsequently charged compounded interest on those balances. For example, Captain Uyematsu received orders to report for military service on January 11, 2022, but Defendant did not provide him with required benefits until May 23, 2022.  For the intervening approximately four and a half months, Defendant overcharged Captain Uyematsu, adding the overcharges to his outstanding balance and then charging compound interest on that balance.

78.     Defendant was aware of the provisions and requirements of the SCRA. Defendant either knew, reasonably should have known, and/or recklessly disregarded its failure to comply with the SCRA and the exploitative and deceptive nature of its policies, procedures, and decisions.

79.     Plaintiffs incurred damages as a direct and proximate result of Defendant's violations of the SCRA. For many class members, this harm is ongoing. As a result, Plaintiffs and the class members seek relief.

## SECOND CAUSE OF ACTION

### (Violation of Military Lending Act)

80.     Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

81.     Plaintiffs have a private right of action for violations of the Military Lending Act "MLA" pursuant to 32 C.F.R. 232.9(e).

82.     The MLA's purpose "is to impose limitations on the cost and terms of certain extensions of credit to Service members and their dependents, and to provide additional protections relating to such transactions in accordance with 10 U.S.C. 987." 32 C.F.R. 232.1(b). The MLA protects servicemembers from unfair and predatory loan practices.

83.     Defendant violated the MLA by failing to have in place an effective risk compliance management program and IT risk governance program.

84.     Defendant violated the MLA by exceeding the military annual percentage rate of interest ("MAPR") of 36 percent with its addition of improper fees and/or improper interest rates. Defendant also failed to provide specific disclosures to Plaintiffs and other class members relating to the cost of credit.

85.     Defendant was aware of the provisions and requirements of the MLA. Defendant either knew, reasonably should have known, or recklessly disregarded its failure to comply with the MLA and the exploitative and deceptive nature of its policies, procedures, and decisions.

86.     Plaintiffs and other class members incurred damages as a direct and proximate result of Defendant's violations of the MLA.

87.     In addition, Plaintiffs and the other class members are entitled to damages not less than $500 for each violation and attorneys' fees pursuant to 32 C.F.R. 232.9(e).

88.     The MLA prohibits Defendant from requiring military borrowers to submit to arbitration involving the extension of consumer credit, or to waive their rights to legal recourse, including their right to bring a class action under the Federal Rules of Civil Procedure as provided for in the SCRA. 10 U.S.C. § 987 ("It shall be unlawful for any creditor to extend consumer credit to a covered member or dependent of such a member with respect to which . . . the creditor requires a borrower to submit to arbitration . . .").

89.     On January 25, 2023, Defendant moved to compel arbitration, contending that its cardmember agreement requires this dispute over active-duty transactions to be resolved by individual arbitration, rather than as a class action under the Federal Rules of Civil Procedure. Defendant's contract with servicemembers thus violates 10 U.S.C. § 987, making Defendant liable for actual and statutory damages of no less than $500 per violation, as well as other relief provided for in the MLA.

## THIRD CAUSE OF ACTION

### (Breach of Contract)

90.     Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

91.     Defendant developed a contractual SCRA program with Plaintiffs that Defendant implemented nationwide and across all loan types.

92.     Defendant's conduct and communications informed Plaintiffs and class members of the terms of this program, with an understanding that they would rely upon that program in managing their financial affairs while a servicemember was engaged in active military service. Defendant's Military Benefits Program was developed and offered to Plaintiffs and other similarly situated military families to maintain competitiveness in the banking industry and to retain the business of servicemembers; Defendant knew that if its program was not competitive, servicemembers would move their business to another bank.

93.     Defendant's Military Benefits Program either constituted an enforceable term of Defendant's existing contracts with Plaintiffs and class members and/or constituted a separate enforceable contract with Plaintiffs and other class members.

94.     In addition, Defendant's contracts with Plaintiffs and class members contain an implied covenant of good faith and fair dealing which required Defendant to deal fairly and in good faith with Plaintiffs and class members.

95.     Plaintiffs and other class members maintained their accounts with Defendant and incurred additional debt on those accounts, to Defendant's benefit, in reliance on Defendant's Military Benefits Program and the purported benefits offered therein by Defendant, which were promised as competitive with those offered by other banks.

96.     The terms of Defendant's Military Benefits Program evolved over time but were always uniform across customers at any given point in time.

97.     Defendant violated the terms of the Military Benefits Program, and thereby breached its contracts with Plaintiffs and class members.

98.     Defendant charged Plaintiffs and class members more interest and fees than was permitted by the Military Benefits Program. Plaintiffs, in reliance on the program terms, promises,

and certain representations from Defendant, as described herein, paid the improper interest charges and fees, and Defendant currently retains those payments.

99. As a direct and proximate result of Defendant's breach of contract as described herein, Plaintiffs and class members have been damaged in an amount to be proven at trial.

## **FOURTH CAUSE OF ACTION**

### **(Breach of Implied Covenant of Good Faith and Fair Dealing)**

100. Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

101. Defendant is in privity of contract with Plaintiffs and each member of the class.

102. Defendant breached its duty of good faith and fair dealing by acting in a manner unfaithful to the purpose of the contract.

103. Plaintiffs and class members had justified expectations that, under the contracts, Defendant would provide them all statutory and contractual benefits, comply with all applicable federal and state statutes, create and maintain a robust SCRA compliance program, and honestly and forthrightly provide them with information needed to understand and enforce their rights.

104. Defendant breached its duty to Plaintiffs and class members by violating the SCRA and Defendant's Military Benefits Program, failing to advise eligible class members about their eligibility for statutory and contractual benefits, concealing such violations from Plaintiffs and class members, and making misrepresentations regarding the nature of its reimbursement program and refunds issued to Plaintiffs and class members.

105. Defendant's breach of its duties was the direct and proximate cause of damages sustained by the Plaintiffs and the class.

## **FIFTH CAUSE OF ACTION**

### **(Violation of Truth in Lending Act)**

106.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

107.    Pursuant to 15 U.S.C. § 1637(b), monthly statements provided by "[t]he creditor of any account under an open consumer credit plan" shall include, *inter alia*:

- "The amount of any finance charge added to the account during the period, itemized to show the amounts, if any, due to the application of percentage rates," § 1637(b)(4);

- "Where one or more periodic rates may be used to compute the finance charge, each such rate, the range of balances to which it is applicable, and . . . the corresponding nominal annual interest rate," § 1637(b)(5); and

- "Where the total finance charge exceeds 50 cents for a monthly or longer billing cycle . . . the total finance charge expressed as an annual percentage rate," § 1637(b)(6).

108.    Defendant violated § 1637 and, upon information and belief, other provisions of TILA by providing monthly account statements to Plaintiffs and other class members which inaccurately reflected outstanding balances and the interest rates that Defendant was applying to the outstanding debt of servicemembers during active military duty.

109.    Defendant violated § 1637 and, upon information and belief, other provisions of TILA by failing to include on monthly statements the amount of any finance charge added to the account during the period, itemized to show the amounts specifically due to the application of rates under the SCRA and/or Defendant's Military Benefits Program.

110.     Defendant violated § 1637 and, upon information and belief, other provisions of TILA by failing to include on monthly statements each rate, including the rate under the SCRA and/or Defendant's Military Benefits Program, and the range of balances to which each rate is applicable.

111.     Plaintiffs and other class members relied on the misrepresentations contained in Defendant's monthly account statements when choosing to maintain their accounts with Defendant. Had Plaintiffs and other class members known that Defendant was charging them an illegally high interest rate in violation of the SCRA and Defendant's Military Benefits Program, or that Defendant's SCRA benefits were not competitive with those offered by other banks, they would not have incurred additional debt on their accounts but rather would have closed their accounts with Defendant and moved to another bank.

112.     Defendant's violations of TILA deceived Plaintiffs and class members, concealed Defendant's SCRA violations, and directly and proximately caused damages to Plaintiffs and the class.

113.     Plaintiffs and the class are entitled to statutory and actual damages and other relief under TILA.

## SIXTH CAUSE OF ACTION

### (Credit CARD Act of 2009)

114.     Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

115.     The Credit CARD Act of 2009 added new substantive provisions to TILA. The CARD Act prohibits card issuers from raising interest rates on existing balances, known as "protected balances." 15 U.S.C. § 1666i-1. The statute provides, "[i]n the case of any credit card

account under an open end consumer credit plan, no creditor may increase any annual percentage rate, fee, or finance charge applicable to any outstanding balance, except as permitted under subsection (b)." *Id*. at (a). Rather, card issuers are required to separately track those protected balances and keep interest at the previous lower rate. *Id*. at (c). The card issuer then has certain options for paying off the protected balances, such as amortizing the balance on a five-year schedule. *Id*.

116.    The CARD Act contains four exceptions to the protected balances rule, none of which apply here. *Id*. at (b). Defendant cannot rely upon the exception for increases in interest rates upon the expiration of a specified period of time, because active duty is by its nature not for a specified period of time, and does not generally have a specified end date. Furthermore, this exception requires that "prior to the commencement of that period, the creditor disclosed to the consumer, in a clear and conspicuous manner, the length of the period and the annual percentage rate that would apply after the expiration of the period." *Id*. Defendant does not disclose to servicemember customers the length of the period or the annual percentage rate that would apply after the expiration of the period "in a clear and conspicuous manner" as required. *Id.*

117.    Any attempt by Defendant to embed a notice waiving rights under the CARD Act into its notice confirming SCRA status – notices which are sent after the servicemember is already on active duty – is a violation of its fiduciary duty.

118.    The Federal Reserve has recognized that the "specified period of time" exception does not apply, stating, "[u]nder revised TILA Section 171, a creditor that complies with the SCRA by lowering the annual percentage rate that applies to an existing balance on a credit card account when the consumer enters military service arguably would not be permitted to increase the rate for

that balance once the period of military service ends and the protections of the SCRA no longer apply." 12 CFR Part 226, Regulation Z; Docket No. R-1370.

119.    In adopting the Regulation Z rules implementing the CARD Act, the Federal Reserve created an additional exception not contained in the statute that purports to allow banks to increase interest rates on veterans' outstanding balances. The "Servicemembers Civil Relief Act exception" provided by Regulation Z does not apply because Defendant did not decrease interest rates pursuant to the SCRA; moreover, it is illegal and should be declared null and void.

120.    Defendant violated the Credit CARD Act by increasing the interest rate on protected balances servicemembers incurred before, during, and after active duty.

121.    As a direct and proximate result of Defendant's violation of the Credit CARD Act, Plaintiffs and the class members suffered damages.

122.    Plaintiffs and the class are entitled to statutory and actual damages and other relief under TILA.

## SEVENTH CAUSE OF ACTION

### (Negligence)

123.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

124.    Certain actions and affirmative undertakings by Defendant, including but not limited to the creation of Defendant's Military Benefits Program and remediation programs, created and obligated a duty of care owed by Defendant in implementing those programs and in dealing with Plaintiffs and class members.

125.    Defendant breached its duty to Plaintiffs and class members by violating the SCRA and the Military Benefits Program, failing to implement technologies and systems to assure

satisfaction of Defendant's obligations under these programs, concealing such violations from Plaintiffs and class members, and making misrepresentations regarding the nature of its reimbursement program and refunds issued to class members.

126.    Defendant knew, reasonably should have known, or recklessly disregarded its duty of care to Plaintiffs and class members.

127.    Defendant's negligence and breach of its duties was the direct and proximate cause of damages sustained by the Plaintiffs and the class.

## EIGHTH CAUSE OF ACTION

### (Negligent Misrepresentation)

128.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

129.    Defendant owed Plaintiffs and other class members a duty to provide accurate and complete information regarding the interest rates being charged on their outstanding debt during periods of active military service and the period thereafter.

130.    As described herein, Defendant provided certain information to Plaintiffs and other class members regarding the interest rates being charged on their outstanding debt during periods of active military service and the period thereafter.

131.    Specifically, Plaintiffs' and class members' periodic account statements reflected a lower interest rate than actually charged on their outstanding debt during and after active duty.

132.    This information was false, as Defendant was actually charging Plaintiffs and class members improperly high interest rates in violation of the SCRA and Defendant's Military Benefits Program, and the communications were designed to conceal the full nature of the violations.

133.     Plaintiffs and other class members suffered damage as a direct and proximate result of their reliance on Defendant's false information, as they were charged illegally high interest rates and improper fees on their outstanding debt during active duty, in violation of the SCRA.

134.     As a direct and proximate result of the Defendant's improper and negligent actions, Plaintiffs and other class members sustained an ascertainable losses as well as other damages.

## NINTH CAUSE OF ACTION

### (Breach of Fiduciary Duty or Special Trust)

135.     Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

136.     Defendant did not have a typical arms-length lender/borrower relationship with Plaintiffs and class members. In the unique facts of this case, Defendant took on the role of fiduciary to the Plaintiffs and the class.

137.     The facts giving rise to the fiduciary duty or special trust include but are not limited to the following:

- Defendant specifically marketed to servicemembers, and particularly to those servicemembers being deployed overseas;

- Plaintiffs and class members provided Defendant with documentation of their military status, which typically included overseas deployment orders, and Defendant maintained an online portal for receiving such information. Thus, Defendant solicited and received notice that Plaintiffs and class members would be deployed overseas or otherwise engaged in active duty and could not fully monitor their accounts or act in an arms-length manner with the Defendant during periods of active military service. Defendant also received such notice

when Plaintiffs and class members charged certain on-base purchases in military engagement areas.

- The SCRA reflects a Congressional determination that servicemembers cannot and should not be required to protect their own financial interests while serving full time in the U.S. military. By participating in the SCRA program and specifically marketing benefits beyond what the SCRA provides, Defendant has acknowledged this unequal relationship and taken on fiduciary duties.

138.    Defendant breached the fiduciary duties owed to Plaintiffs and the class and/or the special trust, including by overcharging servicemembers and returning veterans. Any attempt by Defendant to rely upon notice provided to servicemembers during active duty constitutes a breach of fiduciary duties. These breaches directly and proximately caused Plaintiffs to suffer damages entitling Plaintiffs and the class to an accounting, restitution, and other equitable remedies.

## TENTH CAUSE OF ACTION

### (Accounting)

139.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

140.    Plaintiffs are entitled to an accounting either because (1) Defendant breached fiduciary duties and/or or a special trust, or (2) the accounts that will determine the amounts that Defendant owes to Plaintiffs and the class are possessed only by Defendant and are so complex that they warrant resolution through an accounting rather than traditional discovery procedures.

141.    Accordingly, Plaintiffs and other class members are entitled to an accounting of all overcharges, as well as all assets, funds, revenues, and profits received and retained by Defendant as a result of their improper actions, as described herein.

## ELEVENTH CAUSE OF ACTION

### (Constructive Trust)

142.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

143.    Defendant has wrongfully obtained, and continues to retain, certain funds and profits as a result of its misconduct, which legally belong to Plaintiffs and other class members.

144.    Plaintiffs and other class members are entitled to the imposition of a constructive trust containing all assets, funds, and property derived from Defendant's wrongful acts, with Defendant serving as constructive trustee for the benefit of Plaintiffs and the class.

## TWELFTH CAUSE OF ACTION

### (Federal Declaratory Judgment Act)

145.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

146.    The parties have a genuine dispute over whether Defendant's actions violate the SCRA, TILA, and the MLA and whether Defendant's arbitration clause is invalid.

147.    The parties have a genuine dispute over the validity of the Regulation Z Servicemembers Civil Relief Act exception that purports to allow raising rates on veteran's outstanding balances. Plaintiffs seek declaratory and injunctive relief establishing the requirement of SCRA, TILA, and MLA as applied to Defendant's conduct and enjoining Defendant's future violations of those statutes and invalidating Regulation Z's Servicemembers Civil Relief Act exception.

148.    The parties have a genuine dispute as to whether Defendant's arbitration clause is invalid. Plaintiffs contend that the arbitration clause suffers from defects and ambiguities that

preclude the mutual assent required to form a valid contract. Plaintiffs seek a declaration that the arbitration clause is invalid and unenforceable and appropriate injunctive relief.

149. The parties have a genuine dispute as to whether Defendant's violations of the MLA render the cardmember agreement and/or its arbitration clause void from its inception and free Plaintiffs from compliance with the contractual terms. Plaintiffs seek a declaration that the cardmember agreement and/or its arbitration clause were void from their inception and unenforceable, along with appropriate recessionary and injunctive relief.

150. The Federal Declaratory Judgment Act gives this Court the discretion to entertain a declaratory judgment action. 28 U.S.C. § 2201; *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995). 28 U.S.C. § 2201 provides that "[i]n a case of actual controversy within its jurisdiction . . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." This Court also has the power to grant "further necessary or proper relief based on a declaratory judgment." 28 U.S.C. § 2202.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE,** on behalf of themselves and all other persons similarly situated, Plaintiffs respectfully pray for the following relief:

a. An Order certifying the class, appointing the named Plaintiffs as class representatives and Plaintiffs' attorneys as class counsel;

b. Factual findings that Defendant has violated the Servicemembers Civil Relief Act, the Truth in Lending Act, the Military Lending Act, and the other applicable statutes and rules;

c.    An award of statutory, compensatory, recessionary, consequential, and punitive damages;

d.    An award of pre-and post-judgment interest;

e.    An award of all costs of bringing this action, including expenses and reasonable attorneys' fees;

f.    The imposition of a constructive trust containing all assets, funds, and property derived from Defendant's wrongful acts, with Defendant serving as constructive trustee for the benefit of Plaintiffs and class members;

g.    An Order requiring disgorgement of Defendant's ill-gotten gains to pay restitution to Plaintiffs and all members of the class;

h.    An accounting of all assets, funds, revenues, and profits received and retained by Defendant as a result of its improper actions;

i.    Declaratory and injunctive relief establishing the requirements of SCRA, TILA (including the Credit CARD Act which amended TILA), and MLA as applied to Defendant's conduct and enjoining Defendant's future violations of those statutes;

j.    Declaratory and injunctive relief invalidating the Regulation Z Servicemembers Civil Relief Act exception;

k.    A declaration that Defendant's cardmember agreement and/or its arbitration provision is invalid and void from its inception;

l.    A jury trial on all issues so triable; and

m.    Such other relief as this Court may deem just and proper.

RESPECTFULLY submitted this 27th day of February, 2023.

**ZAYTOUN BALLEW & TAYLOR, PLLC**

By:    /s/ *Matthew Ballew*
Matthew D. Ballew, NCSB # 39515
Robert E. Zaytoun, NCSB# 6942
John R. Taylor, NCSB# 43248
3130 Fairhill Drive, Suite 100
Raleigh, NC 27612
Telephone: (919) 832-6690
Facsimile: (919) 831-4793
MBallew@zaytounlaw.com
RZaytoun@zaytounlaw.com
JTaylor@zaytounlaw.com
*Local Rule 83.1 Counsel*


**SMITH & LOWNEY, PLLC**

By:    */s/ Knoll Lowney*
Knoll D. Lowney, WSBA #23457
Claire Tonry, WSBA #44497
Alyssa Koepfgen, WSBA #46773
2317 E. John Street
Seattle, Washington 98112
Telephone: (206) 860-2883
Facsimile: (206) 860-4187
Knoll@smithandlowney.com
Claire@smithandlowney.com
Alyssa@smithandlowney.com
*Attorneys for Plaintiffs*